UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
JAMES CHEATHAM,

        Plaintiff,

        -against-

CITY OF NEW YORK,

        Defendant.
-------------------------------------------------------X

**MEMORANDUM AND ORDER**
18-CV-2388 (RRM) (LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

    Plaintiff James Cheatham, who is currently incarcerated at the Fishkill Correctional Facility and is proceeding *pro se*, filed the instant action on April 13, 2018, pursuant to 42 U.S.C. § 1983, asserting claims regarding the conditions of his confinement on Rikers Island. In an Order entered on April 2, 2019, this Court granted Cheatham's request to proceed *in forma pauperis* and dismissed the complaint for failure to state a claim upon which relief may be granted. Cheatham was also granted leave to file an amended complaint – and did so on September 9, 2019. For the reasons below, Plaintiff's amended complaint is dismissed and plaintiff is granted 30 days' leave to file a second amended complaint.

## BACKGROUND[1]

    Cheatham's original complaint was filed on April 13, 2018, against the City of New York ("the City"), the State of New York, the New York City Department of Correction, as well as other defendants. (Compl. (Doc. No. 1).) The complaint alleged, among other things, that the Anna M. Kross Center on Rikers Island was a "slave complex" and that the conditions of Cheatham's confinement in that facility violated the constitution. (Compl. at 5–6.) This Court

---

[1] The following facts are drawn from Cheatham's amended complaint and are taken as true for the purposes of this order.

dismissed Cheatham's complaint for failure to state a claim. (Order of 4/2/2019 (Doc. No. 7).) The Court granted Cheatham leave to amend his complaint in order to properly plead a claim regarding the conditions of his confinement. (*Id.* at 8–9.) Cheatham was instructed that, in order to state a claim against the City of New York, he would have plead facts showing a City policy or custom caused his injury. (*Id.* at 5–6.) Cheatham was also instructed that, if he named individual defendants, he needed to name "those individuals who have some personal involvement in the action he alleges," or at the very least "identify each of them as Correction Officer John or Jane Doe, and to the best of his ability describe each individual." (Order of 4/2/2019 at 8–9.)

Cheatham filed the instant amended complaint on September 9, 2019, naming only the City of New York as a defendant. (Am. Compl. (Doc. No. 13) at 2.) Cheatham's amended complaint alleges that from February 20, 2018, until September 1, 2018, while detained at the Anna M. Kross Center on Rikers Island, he was held in living conditions that were "inhumane." (Am. Compl. at 4.) Cheatham points to "the abundance of Rodents and Roaches," showers which lacked privacy and were "overcome by mold," the provision of "tattered clothing which didn't fit," medical care "at the bare minimum," food that did not meet "the standards of the Food and Drug Administration," and a generally low "level of safety." (*Id.* at 4–5.) Cheatham does not identify a specific policy or custom of the City of New York, but quotes language from the Supreme Court's decision in *Farmer v. Brennan*, discussing prison officials' duty under the Eighth Amendment to the Constitution to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [to] 'take reasonable measures to guarantee the safety of the inmates.'" 511 U.S. 825, 832–33 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). Cheatham states that these conditions violated his rights under the Fifth, Eighth, and

Fourteenth Amendments to the United States Constitution. (Am. Compl. at 6.) Cheatham seeks "Monetary, Decla[ra]tory, and Injunctive relief in the sum of $3,000,000." (*Id.*)

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and to dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).

To state a claim, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. In reviewing a *pro se* complaint, the court must be mindful that a plaintiff's pleadings should be held "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104–105 (1976)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Twombly*, the court "remain[s] obligated to construe a *pro se* complaint liberally").

## DISCUSSION

### I. Municipal Liability Under § 1983

To bring a § 1983 action against a municipality such as the City of New York, the plaintiff must also establish that "the deprivation of the plaintiff's rights under federal law is

3

caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012). "A policy or custom may be established by any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff." *Moran v. Cty. of Suffolk*, No. 11-CV-3704 (PKC) (GRB), 2015 WL 1321685, at *9 (E.D.N.Y. Mar. 24, 2015). The purpose of this requirement is to ensure that "a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403–04 (1997). Cheatham has failed to plead this requirement in any of its forms.

**A. Formal Policy**

A plaintiff may establish municipal liability under § 1983 by pleading that a "formal policy officially endorsed by the municipality" caused the constitutional violations he identifies. *Moran*, 2015 WL 1321685, at *9. Cheatham does not identify a formal policy related to the conditions of his confinement; rather, he cites text from the Supreme Court's decision in *Farmer v. Brennan*, 511 U.S. 825 (1994). (Am. Compl. at 4.) The standard articulated in *Farmer*, calling for inmates to "receive adequate food, clothing, shelter, and medical care" is not a formal policy of the City of New York. *Farmer*, 511 U.S. at 832–33. Even if it were, the unsanitary and unhealthy conditions of confinement Cheatham alleges, far from being caused by the policy

4

he quotes, would have occurred *in violation* of that policy. Cheatham therefore fails to state a § 1983 claim against the City on the basis of a formal policy.

### B. Actions or Decisions by Municipal Officials with Decision-Making Authority

A plaintiff can also establish municipal liability by identifying "actions or decisions made by municipal officials with decision-making authority" which caused the constitutional violations alleged in his complaint. *Moran*, 2015 WL 1321685, at *9. Cheatham does mention the "lack of Correction's Officers presence within the dorm area" in his complaint in explaining the low "level of safety" at Rikers Island. (Am. Compl. at 5.) Cheatham does not allege, however, that these officers had decision-making authority, or were involved in actions or decisions that resulted in a municipal policy or custom. Furthermore, in the Order dismissing Cheatham's original complaint, Cheatham was directed by the Court to "describe each individual" he alleges had "some personal involvement in the action he alleges in the amended complaint." (Order of 4/2/2019 at 8–9.) Cheatham has not done that here. Cheatham fails to establish the City of New York's municipal liability on the basis of decisions made by municipal officials.

### C. Persistent and Widespread Practice

A plaintiff may also plead a § 1983 claim against a municipality by identifying "a practice so persistent and widespread that it constitutes a custom," and alleging facts to support the conclusion that the custom caused the constitutional violations he alleges. *Moran*, 2015 WL 1321685, at *9. To establish municipal liability on the basis of a persistent and widespread practice, "a plaintiff must prove that the custom at issue is permanent and well-settled." *Little v. Municipal Corp.*, 51 F. Supp. 3d 473, 487 (S.D.N.Y. 2014); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("Relying on the language of § 1983, the Court has long

5

recognized that a plaintiff may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)). In this context, "'widespread means that [the unconstitutional acts in question] are common or prevalent throughout the [government body]; well-settled means that the [unconstitutional acts in question] have achieved permanent, or close to permanent, status.'" *Kucharczyk v. Westchester Cty.*, 95 F. Supp. 3d 529, 544 (S.D.N.Y. 2015) (quoting *Davis v. City of New York*, 228 F. Supp. 2d 327, 346 (S.D.N.Y. 2002)).

Cheatham identifies seven distinct conditions of confinement in his complaint: [1] "the abundance of Rodents and Roaches," [2] showers which lacked privacy, [3] showers "overcome by mold," [4] clothing that was "tattered" and "which didn't fit," [5] medical care "at the bare minimum," [6] food that did not meet "the standards of the Food and Drug Administration," and [7] a generally low "level of safety." (Am. Compl. at 4–5.) In describing each of these conditions, Cheatham alleges no facts supporting the conclusion that the condition is widespread – or that it persisted in such a way so as to have "achieved . . . permanent, or close to permanent, status." *Kucharczyk*, 95 F. Supp. 3d at 544. At this stage, Cheatham does not need to *prove* the permanence of the conditions he describes, but to prevail on this theory of § 1983 liability, he does need to plead facts supporting the conclusion that the conditions he identifies were well-settled in the City of New York – sufficiently so to be considered a "custom." Because Cheatham alleges no such facts in his amended complaint, he fails to state a § 1983 claim against the City of New York based on a widespread or persistent practice of unconstitutional acts.

### D. Failure to Train

Finally, a plaintiff may establish municipal liability by pleading "a failure by policymakers to properly train or supervise their subordinates." *Moran*, 2015 WL 1321685, at *9. Cheatham makes no allegations to this effect. The amended complaint does not state a § 1983 claim against the City of New York based on a failure by policymakers to train or supervise subordinates.

### II. Constitutional Violations

To state a claim against the City, Cheatham must also identify conditions of confinement that could plausibly be unconstitutional. As a pretrial detainee, Cheatham was guaranteed constitutional conditions of confinement by the Due Process Clause of the Fourteenth Amendment to the Constitution. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Courts generally evaluate a pretrial detainee's rights to constitutionally adequate conditions under the same tests and standards applied in Eighth Amendment challenges to conditions of confinement brought by convicted prisoners. *See Santana v. City of New York*, No. 15-CV-6715 (ER), 2018 WL 1633563, at *6 (S.D.N.Y. Mar. 29, 2018). It is also the case that "conditions of confinement may be aggregated to rise to the level of a constitutional violation, but only when they have a mutually reinforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise." *Santana*, 2018 WL 1633563, at *7 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)). To state a claim that a condition of confinement is unconstitutional, a plaintiff must allege "conditions, either alone or in combination, [that] pose an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. Turning to the conditions Cheatham points to here, the Court concludes that, as pled, Cheatham has not provided sufficient facts to conclude any of these conditions are unconstitutional.

7

### A. Vermin

Cheatham alleges that Rikers Island has an "abundance of Rodents and Roaches." (Am. Compl. at 4.) Even if vermin are widespread at Rikers Island, the presence of vermin in a detainee's housing area generally does not rise to the level of a constitutional violation. *See, e.g., Clay v. Lee*, No. 13-CV-7662 (KMK), 2017 WL 436041, at *4 (S.D.N.Y. Jan. 30, 2017) (citing cases). To state a constitutional claim based on the presence of vermin, Cheatham must allege facts supporting the conclusion that the vermin at Rikers Island posed a serious danger to his health. *See id.* ("Plaintiff does not describe how the presence of cockroaches in his cell presented a danger to his well-being sufficient to satisfy the Eighth Amendment inquiry."). As pled, Cheatham fails to establish a constitutional violation based on the presence of vermin at Rikers Island. Cheatham's second amended complaint should include specific allegations about pervasiveness of rodents and roaches as Rikers Island the danger posed to him by the roaches and rodents.

### B. Showers Lacking Privacy

Cheatham alleges that the showers at Rikers Island provided "no privacy." (Am. Compl. at 4.) As a general rule, however, it is "a simple reality of prison life . . . that there is no expectation of privacy in showers." *Roundtree v. City of New York*, No. 15-CV-8198, 2018 WL 1586473, at *12 (S.D.N.Y. Mar. 28, 2018). Cheatham's generalized complaint about the lack of privacy in the Rikers Island showers therefore fails to state a constitutional claim.

### C. Moldy Showers

Cheatham also brings his constitutional challenge based on the presence of mold in the Rikers Island showers. (Am. Compl. at 4.) Cheatham does not provide details about the type of mold, or whether it caused him serious physical harm. As pled, Cheatham fails to allege that the

mold "pose[d] an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. If, however, Cheatham pleads such facts in his second amended complaint, exposure to mold – black mold in particular – may suffice to state a claim for unconstitutional conditions of confinement. *See Reid v. Nassau Cty. Sheriff's Dept.*, No. 13-CV-1192 (SJF) (SIL), 2014 WL 4185195, at *14 n.14 (E.D.N.Y. Aug. 20, 2014).

### D. Poor Quality Clothing

Cheatham alleges a constitutional violation based on the provision of "tattered clothing which didn't fit." (Am. Compl. at 5.) As pled, Cheatham fails to allege that the clothing provided "pose[d] an unreasonable risk of serious damage to his health." *Walker*, 717 F.3d at 125. And given that Cheatham admits he was supplied with clothing, and makes no suggestion that it was inadequate to keep him warm, it does not appear he could make out such a claim. *Cf. Brown v. McElroy*, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (denying plaintiff's claim that he was unconstitutionally deprived clean clothing in prison because plaintiff "does not claim that he was without any clothing" and therefore "has not sufficiently alleged conditions that would satisfy the objective prong of [an unconstitutional conditions of confinement] claim.").

### E. Minimal Medical Care

Cheatham alleges that the medical care at Rikers Island "was given at the bare minimum to prevent too many grievances." (Am. Compl. at 5.) Yet in order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove "deliberate indifference to [his] serious medical needs." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Cheatham alleges no facts regarding the medical treatment *he* received. He therefore fails to state a constitutional claim based on a failure to provide adequate medical care.

## F. Poor Quality Food

Cheatham alleges that the food provided at Rikers Island "lacked taste, flavor, and" was below the quality "standards of the Food and Drug Administration." (Am. Compl. at 4.) Generally, as long as the food is "nutritionally adequate [and] is prepared and served under conditions which do not present an immediate danger to the health and well-being of the inmates who consume it[,]" no constitutional right is violated. *Willey v. Kirkpatrick*, 801 F.3d 51, 69 (2d. Cir. 2015) (quoting *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam)). Cheatham does not plead facts regarding the food he was provided, its nutritional adequacy, or its potential effects on his health. He therefore fails to state a constitutional claim against the City based on the quality of food he was served at Rikers Island.

## G. Lack of Safety

Finally, Cheatham alleges that, while housed at Rikers Island, "the level of safety was barely existent." (Am. Compl. at 5.) Specifically, Cheatham describes being "housed in an open dorm amongst other inmates with extreme mental issues and crimes extensive in nature." (*Id.*) It is true that "prison officials have a constitutional duty to act reasonably to ensure a safe environment for a prisoner when they are aware that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik*, 981 F. Supp. 830, 837 (S.D.N.Y. 1997), *aff'd sub nom. Heisler v. Rockland Cty.*, 164 F.3d 618 (2d Cir. 1998). However, the mere fact that Cheatham was housed with other inmates does not arise to a constitutional violation. Cheatham's complaints about an abstract threat posed by his fellow prisoners does not state a claim for unconstitutional conditions of confinement.

### III. Injunctive Relief

Cheatham's amended complaint also seeks unspecified declaratory and injunctive relief. (Am. Compl. at 6.) Because Cheatham no longer resides at Rikers Island, any claim for declaratory and injunctive relief is moot. *See, e.g., Khalil v. Laird*, 353 F. App'x 620, 621 (2d Cir. 2009) (*pro se* prisoner's claims for declaratory and injunctive relief in constitutional challenge to conditions of confinement at the federal Metropolitan Detention Center in Brooklyn were moot after he was released during the pendency of the action).

### IV. Leave to Amend

The Second Circuit has instructed that a *pro se* litigant should be given the opportunity to "amend his complaint prior to its dismissal for failure to state a claim, unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Gomez v. USAA Federal Savings Bank*, 171 F.3d 794, 796 (2d Cir. 1999). Where "amendment would be futile," the Court may deny leave to amend. *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006).

As explained above, Cheatham may be able to plead facts sufficient for municipal liability under § 1983 under a theory that certain City practices were sufficiently widespread and persistent to constitute a City custom. Chatham's amended complaint does not plead any facts to suggest he could state a claim under the other three bases for municipal liability. Cheatham is therefore granted leave to file a second amended complaint against the City alleging facts to support that the City's actions were widespread and persistent. In his second amended complaint, Cheatham should allege specific facts supporting the conclusion that the conditions he describes were sufficiently permanent and widespread so as to constitute a custom of the City

of New York. Leave to amend is denied with respect to the other theories of municipal liability because the Court finds amendment would be futile.

Cheatham's leave to amend is also cabined to particular claims regarding his confinement. As explained above, Cheatham has not adequately pled any of his unconstitutional conditions claims. The court concludes that amendment of Cheatham's claims based on the lack of privacy in the showers, the provision of poor-quality clothing, and lack of safety from other inmates would be futile, and therefore denies leave to amend on these claims. Cheatham is granted leave to amend his claims regarding the presence of vermin, mold in the showers, inadequate medical care, and poor-quality food. Cheatham is advised that he should allege particular facts describing how each of these conditions of his confinement caused serious harm to his individual health or well-being.

Cheatham is also advised that any amended complaint will replace all prior complaints and thus must stand on its own, without reference to the prior complaints. Therefore, Cheatham must include in the second amended complaint all necessary information that was contained in the prior complaints. The second amended complaint must be captioned as a "Second Amended Complaint" and bear the same docket number as this order.

## CONCLUSION

Plaintiff's complaint is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. §§ 1915A(b)(1); 1915 (e)(2)(B). Cheatham is granted thirty days' leave, from the date of this Order, to file a second amended complaint against the City of New York. If Cheatham fails to file a second amended complaint within the time allowed, or fails to cure the deficiencies discussed herein, judgment may enter against him. No summons shall issue at this time and all further proceedings shall be stayed for 30 days from the date of this Order. The

Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
      Jan 14 2020

                                      s/Roslynn R. Mauskopf

                                      _____
                                      ROSLYNN R. MAUSKOPF
                                      United States District Judge